Glen D. Hocking and Louann Hocking,
Plaintiffs-Appellants,†

v.

City of Dodgeville, Defendant-Respondent,

Charles C. O'Rourke, Joan R. O'Rourke,
American Family Mutual Insurance Company,
Amy Crubaugh-Schrank, Shaun Sersch,
Wendy Sersch and Germantown
Mutual Insurance Company, Defendants.

Court of Appeals

*No. 2008AP2812. Submitted on briefs April 10, 2009.
—Decided June 4, 2009.*

2009 WI App 108

(Also reported in 770 N.W.2d 761.)

† Petition to review granted 11/3/09.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Tyler T. Kieler* of *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP*, Platteville.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Peggy E. Van Horn* of *Law Offices of Thomas P. Stilp*, Brookfield.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. The issue on this appeal is whether the ten-year statute of repose for actions for injury resulting from improvements to real property, Wis. Stat. § 893.89 (2007–08),[1] bars this action against the City of Dodgeville. Glen and Louann Hocking claim damages to their property resulting from excessive storm water run-off, which, they allege, constitutes a nuisance and is the result of negligence by the City in the design, plotting, approval, and development of an adjacent subdivision. The Hockings contend the circuit

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

court erred in rejecting their argument that the circumstances here fall into two categories to which the statutory bar does not apply: first, an express warranty or guarantee of the improvement, § 893.89(4)(b), and, second, negligence in the maintenance, operation, or inspection of the improvement, subsec. (4)(c).

¶ 2. We conclude the statements made to the Hockings by individual city officials do not as a matter of law constitute an express warranty or guarantee by the City. We also conclude that, assuming the City's actions with respect to the adjacent subdivision streets negligently created and maintained a nuisance, that conduct does not constitute "negligence in the maintenance, operation, or inspection of an improvement to real property" within the meaning of Wis. Stat. § 893.89(4)(c). Accordingly, we agree with the circuit court that this action against the City is barred by § 893.89.

## BACKGROUND

¶ 3. The following facts are undisputed for purposes of this appeal. The Hockings purchased their home in the City of Dodgeville in 1978 when the surrounding land was undeveloped. In 1989 Wallace Rogers purchased the land surrounding the Hockings' property and hired Lawrence Schmit, a professional engineer, to plat a subdivision. The City hired Schmit to design and install the streets and sewers. The subdivision, including the streets, was ready for use in 1992, although a final coat of asphalt was laid on one of the streets in 1993.

¶ 4. As a result of the development, the Hockings' home was at the bottom of a slope on which other homes were built. That has caused storm water run-off from city property and private properties to collect on their property, both inside and outside their residence,

causing damage to their home and erosion of the land. Glen had numerous conversations with city officials over the years on the water drainage problem and, based on what he was told, he believed the City was going to take care of it. However, in September 2003 a city representative informed him that the City would not be doing anything to stop the excessive water flow onto his property.

¶ 5. The Hockings filed this action in August 2006 against the City, Rogers, and Schmit. The amended complaint asserts claims of negligence and negligent and intentional creation and maintenance of a nuisance against these defendants.[2] The three defendants moved for summary judgment on the ground that WIS. STAT. § 893.89 bars this action because it was filed more than ten years after the substantial completion of the subdivision. The Hockings opposed summary judgment, contending that Glen's deposition and affidavit showed he received express guarantees from City officials and thus, pursuant to subsec. (4)(b), the statutory bar did not apply. They also contended that, pursuant to subsec. (4)(c), the statutory bar did not apply because the City was the owner and occupier of the streets in the subdivision, the streets were under its control, and the City was negligent in the maintenance of the improvement.

---

[2] The Hockings also alleged claims of negligence and negligent maintenance of a nuisance against the current and prior owners of neighboring properties. Those claims were dismissed by the circuit court on summary judgment and are now before the supreme court, which accepted certification from this court. *Hocking v. City of Dodgeville*, No. 2007AP1754 (argued Apr. 15, 2009), Wisconsin Supreme Court and Court of Appeals Case Access, http://wscca.wicourts.gov.

¶ 6. The circuit court rejected the Hockings' arguments and concluded the statutory bar did apply. With respect to Wis. Stat. § 893.89(4)(b), the court decided there was no evidence of an express warranty or guarantee approved by the City of Dodgeville Common Council. In analyzing subsec. (4)(c), the court assumed that the City was negligent in its approval of the design and construction of the subdivision, but it rejected the Hockings' argument that the City's failure to redesign or reconstruct the improvement constituted "negligence in the maintenance . . . of [the] improvement . . ." within the meaning of that subsection.

¶ 7. Accordingly, the circuit court granted summary judgment in favor of the City, Rogers, and Schmit and dismissed the complaint as to them. The Hockings appeal only the dismissal of the City.

## DISCUSSION

¶ 8. On appeal the Hockings renew their argument that the ten-year bar in Wis. Stat. § 893.89 does not apply because the facts of this case come within § 893.89(4)(b) and (c). The Hockings concede that the date of the substantial completion of the improvement was more than ten years before the filing of their complaint and, thus, the action is barred unless the bar is inapplicable under either subsec. (4)(b) or (c). We understand their position to be that, with respect to these two subsections, there are no material issues of fact and therefore they are entitled to a ruling as a matter of law that the statutory bar is not applicable.

¶ 9. We review de novo the grant of summary judgment, employing the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). A party is entitled to

526

summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

■■■

¶ 10. The resolution of this appeal requires that we construe WIS. STAT. § 893.89, and, in particular, § 893.89(4)(b) and (c). When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, we conclude the statutory language has a plain meaning, then we apply the statute according to that plain meaning. *Id.*, ¶ 45.

¶ 11. As relevant to this case, WIS. STAT. § 893.89(2) provides that

> no cause of action may accrue and no action may be commenced . . . against any person involved in the improvement to real property after the end of the exposure period . . . for any injury to property . . . arising out of any deficiency or defect in the design, land surveying, planning, supervision [of construction of, or], the construction of . . . the improvement to real property.[3]

---

[3] WISCONSIN STAT. § 893.89(2) provides in full:

527

(Footnote added.) "Exposure period" means "the 10 years immediately following the date of substantial completion of the improvement to real property." § 893.89(1).

¶ 12. This statutory bar does not apply in certain situations. WIS. STAT. § 893.89(4). Of significance to this case, subsec. (4) provides that the bar does not apply to:

> (b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.

> (c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.

¶ 13. Turning first to WIS. STAT. § 893.89(4)(b), we begin by summarizing the evidence that, according to the Hockings, constitutes an express guarantee by the City within the meaning of this provision. For purposes of this appeal, we treat the following testimony of Glen as undisputed. He talked to several members of the

---

(2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

The exceptions described in subsec. (3) are not at issue in this case.

common council before and during the construction of the subdivision, expressing his concern that the grade was going to create a water problem, and their response was that "[i]f there was a problem, they would take care of it." After the subdivision was developed, in 1994 or 1995 and continuing until 2003, he had many discussions with all of the council members, both when they came to see his property and in informal meetings at city hall. They said not to worry because they were going to take care of the water problem on his land. In that time period he also talked to the city assessor who told him "[t]hey were working on it." These people proposed various solutions to the water drainage problem during this time period, but the solutions either were not viable or nothing was done to effectuate them. It was not until September 2003 that the Hockings were told by the city assessor that nothing could be done to fix the problem.

¶ 14. The Hockings acknowledge in their briefs that the City took no "official" action to make an express guarantee. However, they contend, Wis. Stat. § 893.89(4)(b) does not require this because it does not expressly state that municipalities making express warranties or guarantees must act officially. In the Hockings' view, this subsection is intended to provide relief from the statutory bar for plaintiffs who did not file suit sooner because they were reasonably relying on promises made to them. The City responds that it cannot make an express warranty or guarantee on an improvement to real property without approval by the City of Dodgeville Common Council. *See* Wis. Stat. § 62.11(3) and (5). The Hockings reply that it is irrelevant that they could not enforce the officials' guarantees against the City because they reasonably relied on the guarantees to their detriment.

529

¶ 15. We conclude the Hockings' proposed construction is inconsistent with the plain language of Wis. Stat. § 893.89(4)(b). Subsection (4)(b) extends the exposure period for a person who has expressly warranted or guaranteed the improvement by the period of the warranty or guarantee. The evident purpose is to give a party who has bargained for a warranty or guarantee the benefit of the warranty or guarantee period before the exposure period begins to run. It is unreasonable to extend the exposure period by the warranty or guarantee period if the warranty or guarantee is not enforceable.

■ ■

¶ 16. The distinction the Hockings make between an unofficial and an official action of the City is nowhere to be found in the language of Wis. Stat. § 893.89(4)(b), nor is it in any case law the Hockings have provided. The common council is the only entity authorized by statute to act on behalf of the City, *see* Wis. Stat. § 62.11(5), and, while the common council may delegate its authority, it must do so clearly and specifically. *See Holzbauer v. Safeway Steel Prods.*, 2005 WI App 240, ¶ 19, 288 Wis. 2d 250, 708 N.W.2d 36. Subsection (4)(b) does not need to explicitly state that a municipality must take "official action," as the Hockings contend, because the only manner in which a municipality may lawfully act is already established by the statutes that govern it. A party seeking to enforce a contract against a municipality has the burden of proving compliance with the statutes governing the municipality. *Holzbauer*, 288 Wis. 2d 250, ¶ 20.

■

¶ 17. We also see no support in the statutory language for the Hockings' position that the legislature

intended to provide an equitable estoppel exception in Wis. Stat. § 893.89(4)(b). Equitable estoppel is a well-established court-made doctrine that may be applied when an action or non-action by the party against whom estoppel is asserted induces reasonable reliance by the other party, to that party's detriment. *Kamps v. DOR*, 2003 WI App 106, ¶ 20, 264 Wis. 2d 794, 663 N.W.2d 306. The doctrine may be applied to prevent a party from asserting a defense of a statute of limitations when the conduct is so unfair and misleading as to outweigh the public interest in setting a limitation on bringing claims. *Gonzalez v. Teskey*, 160 Wis. 2d 1, 13, 465 N.W.2d 525 (Ct. App. 1990).[4] There is no language in subsec. (4)(b) that can reasonably be read to convey these concepts.

¶ 18. We conclude the only reasonable construction of Wis. Stat. § 893.89(4)(b) is that any express

---

[4] We note that Wis. Stat. § 893.89 is not a statute of limitations but, rather, a statute of repose in that it may cut off a cause of action before it accrues. *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 38, 283 Wis. 2d 1, 698 N.W.2d 794. However, this distinction is not relevant for purposes of our discussion on the Hockings' estoppel theory of statutory construction.

We also observe that the Hockings do not make an equitable estoppel argument against the application of Wis. Stat. § 893.89 that is independent of their proposed construction of subsec. (4)(b). Because we reject their proposed construction, we do not discuss the issues that would arise if the Hockings were arguing against the application of § 893.89 based on the common law doctrine. Such issues would include whether the Hockings' reliance on the city officials' statements was reasonable and the heavier burden a party bears when asserting equitable estoppel against the government. *See Kamps v. DOR*, 2003 WI App 106, ¶ 20, 264 Wis. 2d 794, 663 N.W.2d 306.

warranty or guarantee made by the City must be made in compliance with Wis. Stat. § 62.11(3) and (5). Because there is no dispute that did not occur, none of the statements made to Glen by city officials constitute an express warranty or guarantee by the City.

¶ 19. We recognize there may be other reasons why the statements on which the Hockings rely are not express warranties or guarantees within the meaning of Wis. Stat. § 893.89(4)(b). For example, the City argues that all the statements made after the completion of the subdivision—to the effect that the officials would try to do something to ameliorate the water drainage problem —are not express warranties or guarantees of the improvement. There may be other reasons why those statements occurring before and during the construction of the subdivision are not express warranties or guarantees of the improvement within the meaning of the statute. However, we find it unnecessary to explore further the meaning of the phrase "expressly warrants or guarantees the improvement," because, whatever its proper scope, the City did not warrant or guarantee.

¶ 20. We turn now to Wis. Stat. § 893.89(4)(c), which provides that the statutory bar does not apply to owners or occupiers of real property "for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property." The Hockings argue that they have satisfied the requirements of this provision because the City is the owner and occupier of the streets in the subdivision and, according to their submissions, the City has negligently maintained the streets by not altering them to alleviate the ongoing water damage to their property. They point to this omission but not to any other conduct by the City after the completion of the subdi-

vision. This omission, in the Hockings' view, constitutes "negligence in the maintenance, operation or inspection of an improvement to real property."

¶ 21. The City disputes that it has negligently maintained a nuisance and disputes that it offered no assistance to the Hockings in ameliorating the problem. However, for purposes of this appeal, we accept as true the Hockings' submissions showing that the City created the circumstance that caused water damage to the Hockings' property and failed to take corrective action. The issue, then, is whether this conduct satisfies the requirements of Wis. Stat. § 893.89(4)(c). We agree with the circuit court that it does not.

¶ 22. According to the Hockings' expert's affidavit, which we accept as true for purposes of this appeal, the collection of water on their property was caused by the conversion of absorptive agricultural land to impervious surfaces, the lack of a storm sewer network uphill from the Hockings to collect the storm water that reaches the Hockings' property, and the altering of the streets and the grading around the Hocking property. All of these acts and omissions, which we assume without deciding can be attributed to the City, took place during the construction of the subdivision. The purpose of Wis. Stat. § 893.89 is "to protect individuals [after a certain period of time] from liability based upon the actions that occur during *their involvement in improving the property.*" *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 71, 283 Wis. 2d 1, 698 N.W.2d 794 (emphasis in original). Thus, the City is protected from liability, after the expiration of the exposure period, for the damages resulting from the foregoing acts and omissions.

¶ 23. Wisconsin Stat. § 893.89(4)(c) addresses an owner's or occupier's conduct *after* the completion of the

improvement, but only with respect to the "mainte- nance, operation or inspection of [the] improvement." Here we are concerned with "maintenance . . . of [the] improvement." The applicable common meaning of "maintenance" in this context is "the labor of keeping something (as buildings . . .) in a state of repair . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1362 (1993).[5] Because the Hockings assert that the City owns and occupies only the streets of the subdivision, to come within this subsection the City's negligence must logi- cally arise out of the maintenance of the streets within the subdivision. However, there is no factual submis- sion showing that the City did or failed to do something with respect to keeping the subdivision streets in repair that caused water damage to their property.

¶ 24. It appears the Hockings are arguing that, because the design and construction of the streets caused the water drainage problem, the City's failure to alter the streets to remedy the problem is a failure to "maintain" the streets. However, this is not a common meaning of "maintain."

¶ 25. Besides being inconsistent with the plain language of WIS. STAT. § 893.89(4)(c), the Hockings' pro- posed construction would, as the circuit court pointed out, undermine the purpose of § 893.89. Construing "negligence in the maintenance . . . of an improve- ment . . ." to mean negligent maintenance of a nuisance caused by an improvement would remove from the protection of subsec. (2) every failure of an owner or occupier to remedy continuing damage that resulted from an improvement. The effect would be to impose on

---

[5] Courts may use a dictionary to establish the common meaning of a word, and this does not mean the word is ambiguous. *State v. Sample*, 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998).

them liability after the end of the exposure period based on their actions—and the actions of others—during involvement in improving the property. This is contrary to the purpose of the statute. *See Kohn*, 283 Wis. 2d 1, ¶ 71.

## CONCLUSION

¶ 26. We conclude the circuit court properly granted summary judgment in favor of the City. Accepting the Hockings' submissions as true for purposes of this appeal, they do not establish the requirements of either WIS. STAT. § 893.89(4)(b) or (c). Accordingly under subsec. (2), the Hockings are barred from bringing this action against the City.

*By the Court.*—Judgment affirmed.